**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**


**WESLEY WOOD,**

          Petitioner,


     v.                           **Civil Action No. 5:23-CV-339
                                      Judge Bailey**


**WARDEN, FCI Gilmer,**

          Respondent.


## REPORT AND RECOMMENDATION

### I.    Introduction

      On November 20, 2023, the pro se petitioner filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc. 1].  Petitioner is a federal inmate at the Federal Correctional Institution ("FCI") Gilmer, in Glenville, West Virginia and is challenging the Bureau of Prisons' ("BOP's") computation of his sentence.  He alleges that the BOP has incorrectly calculated his sentence by refusing to give him credit toward his federal sentence for time he spent in the physical custody of the BOP after being erroneously designated to a federal facility while he was out on a writ from the state of Virginia.  [Doc. 1-1 at 2].

      The undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted at that time.  Accordingly, an Order to Show Cause was issued to the respondent. [Doc. 10].  Respondent filed a Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment, along with a supporting memorandum of law on February 6, 2024. [Docs. 14; 14-1].  An Order and Roseboro Notice was entered and forwarded to the petitioner on February 7, 2024. [Doc. 15]. The petitioner did not file a responsive pleading, and the matter is now before the undersigned for a recommended disposition pursuant to LR PL P 2.  For the reasons set forth below, the undersigned recommends that respondent's motion be granted and that the petition be dismissed with prejudice.

## II.   Background

On March 31, 2006, the petitioner was arrested in Stafford County, Virginia, for a probation violation stemming from an original charge of unlawful wounding. (Case No. CR00B00433-00). [Doc. 14-2 at 3, 9].   Following his arrest, the petitioner remained in state custody, and on May 19, 2006, the Circuit Court of Stafford County revoked the petitioner's probation and ordered him to serve the previously suspended sentence of three (3) years and two (2) months. [Doc. 14-2 at 9-10].  While petitioner was serving this state sentence, a sealed federal Indictment was returned in the United States District Court for the Eastern District of Virginia on July 11, 2006, charging petitioner and twelve other defendants with various drug-related felony violations.[1]  The federal district court issued a writ of habeas corpus *ad proseqeundum*, on July 25, 2006, and on August 3, 2006, the state transferred temporary physical custody of the petitioner to the United

---

[1] Some of the information in this section is taken from the petitioner's criminal docket available on PACER. *See **USA v. Bollfield et al,*** 1:06-cr-100292-12 (E.D. Va. 2006) *See also **Philips v. Pitt Cnty. Mem. Hosp.***, 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); ***Colonial Penn. Ins. Co. v. Coil***, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

States Marshals Service ("USMS") so that he could answer the charges in the federal Indictment. [Doc. 14-3 at 1].

On November 3, 2006, petitioner pled guilty in the federal district court for the Eastern District of Virginia to conspiracy to distribute fifty (50) grams or more of cocaine base (Count I), in violation of 21 U.S.C. §§ 846 and 841(a)(1) and possession with intent to distribute five (5) or more grams of cocaine base, and a mixture and substance containing cocaine (Count 15), in violation of 21 U.S.C. § 841(a)(1). [Doc. 14-2 at 16 -18]. On January 26, 2007, petitioner was sentenced in the United States District Court for the Eastern District of Virginia to life imprisonment on Count I and 480 months on Count 15. The district court ordered the sentences to run concurrently to each other, but the sentencing Order was silent regarding any relationship to, or recommendation regarding, the petitioner's previously imposed state sentence.

Following his sentencing in federal court, the petitioner remained in federal custody, via the writ but was erroneously designated to USP Big Sandy, instead of being returned to state custody. [Docs. 1-1 at 12; 14-3 at 2].   Officials at the BOP discovered the erroneous designation, and it was subsequently canceled on July 25, 2007.  [Doc. 14-3 at 2].  The petitioner was returned to state authorities on July 27, 2007, and the federal judgment was lodged as a detainer. [Id].

On May 6, 2008, during the time he was in state custody, petitioner's federal sentence was reduced pursuant to 18 U.S.C. § 3582(c)(2), based on the retroactive application of amendments to the Sentencing Guidelines.  The district court reduced petitioner's sentence from Life to 360 months on Count 1 and from 40 years to 360 months on Count 15, to run concurrently with each other. [Docs. 14-2 at 29; 14-3 at 2].

On January 9, 2009, the petitioner completed service of his state sentence and was released to the federal detainer to begin serving his federal sentence. [Doc. 14-3 at 2]. The service computation, calculated by the Virginia Department of Corrections ("VA DOC"), reflected that his state sentence commenced on March 31, 2006, (with the application of prior custody credit), and that it continued to run while the petitioner was in in the physical custody of the federal government during the erroneous designation, with all that time being credited toward his state sentence. [Docs. 14-2 at 6 – 7; 14-3 at 2].

The BOP then computed petitioner's federal sentence to reflect that it commenced on January 9, 2009 (the day he was transferred into exclusive federal custody upon completion of his state sentence). [Docs. 14-2 at 32; 14-3 at 2].  The BOP did not apply any prior custody credit, as that time had already been applied by Virginia to his state sentence, to which his federal sentence was running consecutively. [Doc. 14-3 at 2]. Petitioner's projected release date was April 4, 2035, via Good Conduct Time ("GCT") Release. [Docs. 14-2 at 31 – 33; 14-3 at 2].

While in federal custody, the petitioner received two additional reductions to his federal sentence.  On September 10, 2015, the petitioner received a second sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), also based on an a retroactive application of an amendment to the Sentencing Guidelines, with an effective date of November 1, 2015.  His sentence this time was reduced from 360 months to 324 months on each count, to run concurrently.  [Docs. 14-2 at 35 - 36; 14-3 at 3].  The BOP updated petitioner's sentence computation accordingly,reflecting the commencement date of January 2, 2009, and  resulting in a Projected Release Date of February 21, 2032, via GCT Release. [Docs. 14-2 at 38;14-3 at 2].

On May 27, 2020, the petitioner received a third reduction to his federal sentence, pursuant to Section 404 of the First Step Act of 2018.  His sentence of imprisonment was reduced from 324 months to 240 months on each count, to run concurrently.  [Docs. 14-2 at 42 - 48; 14-3 at 2].  The BOP again updated petitioner's sentence computation accordingly, reflecting the January 9, 2009 commencement date and now showing a Projected Release Date of April 16, 2025, via First Step Act ("FSA") Release. [Docs. 14-2 at 50; 14-3 at 2].

Petitioner is now seeking credit toward his federal sentence for the time period from August 3, 2006  to July 27, 2007, during which he was erroneously designated to the federal facility, for a total of eleven (11) months and twenty-five (25) days, which he contends should be applied to his federal sentence. [Doc. 1-1 at 15, 17].[2] He requests this Court to vacate his sentence and resentence him to reflect "the additional 11 months and 25 days of jail time credit," or in the alternative to conduct "an evidentiary hearing" so that he "may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record." [Doc. 1 at 8].

### III.    Legal Standards

#### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony

---

[2] Respondent points out that the disputed time is actually eleven (11) months and twenty-three (23) days. [Doc. 14-3 at 2].

without converting the proceeding to one for summary judgment.  ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See **Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

## B.  Motion to Dismiss for Failure to State a Claim

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.'  ***Bell Atl. Corp. v. Twombly***, 550 U.S. 554, 570 (2007) (emphasis added)."  ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995).  In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

6

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." **Id**. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012).  "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. **Id**. at 396–97.

### C. <u>Motion for Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

7

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts*." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

### IV. Discussion

#### A. The state of Virginia retained primary jurisdiction over the petitioner from the date of his state arrest until he completed his state sentence on January 9, 2009, at which time his federal sentence commenced

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination of when the sentence commences and how much prior custody credit the prisoner may be due toward the federal sentence.  *United States v. Wilson*, 503 U.S. 329, 334 (1992); 18 U.S.C. § 3585. The first inquiry involves determining the date upon which a federal prisoner's sentence commences and is governed by 18  U.S.C. § 3585 (a), which states that a federal sentence commences on  "the date the defendant is received in custody while waiting transportation to, or arrives voluntarily to

commence service of a sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).   Typically, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate acquires and retains primary jurisdiction over the inmate until the sentence imposed by that sovereign is satisfied. ***Crandell v. Hudgins***, No. 1:21-CV-63, 2022 WL 39452, at *1, *4 (N.D. W.Va.  Jan. 10, 2022) (Mazzone, M.J.) *report and recommendation adopted,* No. 1:21-CV-63, 2022 WL 386022 (N.D. W.Va.  Feb. 8, 2022), *citing **United States v. Evans,*** 159 F.3d 908, 912 (4th Cir. 1998).  This doctrine of primary jurisdiction, in the context of resolving sentence computations, recognizes "the priority of service regarding a defendant's contemporaneous obligations to multiple sovereigns, whereby a defendant will fulfill his obligations to the sovereign with primary jurisdiction over him before any others.**" *Yeary v. Masters****,* No. 1:14-19114, 2016 WL 5852865**,** at *2 (S.D. W.Va.  Sept. 30, 2016) *citing **Trowell v. Beeler***, 135 Fed.Appx. 590, at n.2 (4th Cir. May 19, 2005) (internal citations omitted). When a state has primary jurisdiction over the defendant, federal custody "commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." ***United States v. Evans***, *supra* at 912.  Satisfaction or relinquishment occurs through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. ***Kurosky v. Saad***,  No. 1:18-CV-197, 2020 WL 808639, at *5  (N.D. W.Va. January 6, 2020) (Aloi, M.J.) *report and recommendation adopted,* No. 1:18-CV-197, 2020 WL 807529 (N.D. W. Va. Feb 18, 2020).

When an inmate is borrowed pursuant to a writ of *habeas corpus ad prosequendum*, the original sovereign has "merely loaned that prisoner to federal authorities and 'does not forfeit its primary jurisdiction.'" ***Perkins v. Saad***, No. 5:16-CV-

182, 2017 WL 6001513, at *3, (N.D. W.Va. Sept. 21, 2017) (Trumble, M.J.) *report and recommendation adopted*, No. 5:16-CV-182, 2017 WL 6001504 (N.D. W.Va. Dec. 4, 2017) (citing **United States v. Evans**, *supra*, at 912.) (restating the principle of primary jurisdiction as set out in **Ponzi v. Fessenden**, 258 U.S. 254, 260 (1922)).; **Thomas v. Whalen,** 962 F.2d 358, 360 (4th Cir. 1992) at n.3 (citations omitted)*.*  In such cases, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." *Id*.

       In this case, petitioner essentially argues that his erroneous designation to the physical custody of the BOP was a relinquishment by the state of its primary jurisdiction, and that as such, the time he spent in federal custody before being returned to Virginia should count toward his federal sentence. [Doc. 1-1 at 15, 17]. This Court, however,  has consistently ruled that an erroneous designation does not operate as either a relinquishment by the state, or to commence a federal sentence. *See* **Cherry v. O'Brien**, No. 3:13-CV-1, 2013 WL 3152362, at *6 (N.D.W. Va. June 19, 2013), aff'd 543 Fed. Appx. 324 (4th Cir. 2013)  (denying habeas relief under § 2241 where prisoner was mistakenly delivered to FCI Cumberland, but "error was short-lived and corrected in about a month's time"); **Thomas v. Deboo**, No. 2:09-CV-134, 2010 WL 1440465, at *4,  (N.D. W. Va. Mar. 8, 2010) (Joel, M.J.) *report and recommendation adopted*, No. 2:09-CV-134,  2010 WL 1440693 (N.D. W.Va  Apr. 8, 20100 aff'd 403 Fed.Appx. 843, (4th Cir 2010) (erroneous designation to BOP facility for approximately four months did not commence running of federal sentence where prisoner remained under primary jurisdiction of the state); **Cannon v. Deboo,** No. 5:08-CV-69, 2009 WL 692149, at *8,*15 (N.D. W. Va. Mar.

13, 2009) (erroneous designation to a federal facility for a period of approximately two months did not operate to commence a defendant's federal sentence).

In **Cannon**, this Court acknowledged that "there is some precedent" supporting the petitioner's argument that an erroneous designation to a federal prison constitutes a relinquishment of the state's primary jurisdiction, thereby resulting in a commencement of the federal sentence, and undertook a review of the conflicting caselaw on the question. *Id*. at 14.  In this regard, the Court noted particularly that the holding in **Stephens v. Sabol**, 539 F.Supp.2d 489, 495 (D. Mass. 2008) and also the Tenth Circuit's decision in **Weekes v. Fleming**, 301 F.3d 1175, 1180–1181 (10th Cir. 2002) both relied on the fact that the prisoner transfers had been accomplished without a writ of habeas corpus *ad prosequendum*, and that without the writ to ensure the state's retention of jurisdiction,  the Courts had determined that the transfers constituted the state's affirmative act of relinquishment, thereby ceding primary jurisdiction to the federal government and commencing the federal sentence upon the transfer. **Cannon** at *14 (internal citations omitted). (Unlike the petitioners in **Stephens** and **Weekes**, the petitioner in **Cannon** *had* been transferred to the physical custody of federal authorities pursuant to a writ of habeas corpus *ad prosequendum*. *Id*. at *10).  The Court also acknowledged, but declined to follow, the decision by the District Court for the Eastern District of North Carolina a decade earlier holding that § 3585(a) should be read  "to imply that a federal sentence begins on the date a prisoner is received in custody by the United States Marshal, awaiting transportation to prison, even if the prisoner is subsequently released to state custody and returned to federal custody." **Luther v. Vanyur**, 14 F.Supp.2d 773, 775 - 776 (E.D.N.C. 1997) cited in **Cannon** at *14. The undersigned notes that there was also no

writ effecting the transfer in the **Luther** case, a distinction relied upon by numerous courts that have since declined to follow **Luther**. *See, for example*, **Wise v. Stansberry** No. 2:10-CV-605, 2011 WL 6960815, at n. 4, (E.D. Va.  Dec. 22, 2011) (Stillman, M.J.) *report and recommendation adopted*, No. 2:10-CV-605, 2012 WL 242846 (E.D. Va June 27, 2012).   Significant for purposes of the present inquiry is the language in **Luther** that distinguishes it from cases, such as the one now before this Court, recognizing that a state prisoner may be "on loan to federal authorities, thereby negating the commencement of the federal sentence," and further that an "overwhelming majority" of those cases involved the transfer of a state prisoner pursuant to a writ of *habeas corpus ad prosequendum,* in contrast to the case before it, where the transfer was not pursuant to a writ and was therefore "much more complete and final." **Luther**, *supra,*  at  778.

The Court in **Cannon** also reviewed precedent from other jurisdictions holding that "an erroneous designation does not cede jurisdiction over a prisoner." *Id*. at *15. *citing, for example*,  **Allen v. Nash,** 236 Fed.Appx. 779, 782–783 (3rd Cir.2007) (unpublished) (erroneous designation to federal facility for a period of almost two years did not operate to waive the state's primary jurisdiction over prisoner, or to commence the prisoner's federal sentence); **Free v. Miles,** 333 F.3d 550, 554-55 (5th Cir.2003) (a prisoner's erroneous designation to a federal facility, which lasted approximately  six months did not cede the state's primary jurisdiction, and there is no violation of the common law rule against discontinuous or interrupted incarceration, so long as a prisoner's total time of incarceration in both federal and state prisons "is not and will not be increased by even a single day."); **Stroble v. Conner,** No. 03-3155-SAC,  2005 WL 2175161 at *2, (D. Kan. Sept. 8, 2005) *aff'd* **Stroble v. Terrell**, 200 Fed.Appx. 811(10th Cir. 2006) (erroneous

placement in federal custody for a period of six months did not commence the petitioner's federal sentence, and such an "administrative error" should not result in a "get out of jail early card" where the period of incarceration was not extended by the error).  Based on its review, this Court determined that since it could find "no direct case on point decided by the United States Court of Appeals for the Fourth Circuit," it was accordingly "persuaded" to "follow the holdings consistent with the notion that an erroneous designation does not automatically cede jurisdiction." *Cannon, supra* at *15.  The Court further explained that its decision in this regard was based on its belief "that a prisoner's time of incarceration should be governed by the sentence, not by administrative error." *Id*.

Similarly, the District Court for the Southern District of West Virginia, after conducting a review of the relevant caselaw, also ruled that, "notwithstanding the petitioner's erroneous designation to USP McCreary, the Commonwealth of Kentucky did not relinquish its primary jurisdiction" over the prisoner and that the erroneous designation did not automatically cede jurisdiction. *Yeary v. Masters, supra*, at *5, *citing* *Cannon v. Deboo, supra* at *15.  The Court further noted that a factor distinguishing *Yeary* from earlier cases, such as *Weekes, supra,* where there had been a finding that the state had relinquished jurisdiction after an erroneous designation, was "the subsequent conduct of both the United States and the state which 'reinforced the presumption that a permanent transfer was intended.'" *Yeary* at *3 (Internal citations omitted). The Court further underscored the fact that subsequent to its decision in *Weekes*, the Tenth Circuit on more than one occasion, "in similar situations" had reached the opposite conclusion and denied habeas relief where, based on the specific facts of the case, there was "insufficient

evidence to show that the state relinquished its primary custody over the prisoner" following an erroneous designation. *Id*. at *4, *citing **Binford v. United States***, 436 F.3d 1252, 1253 (10th Cir. 2006) (erroneous designation did not commence the sentence); ***Stroble v. Terrell,*** *supra* at 811, 816 -17  (same).

The specific conduct of the state and federal governments, with respect to demonstrating their intentions regarding relinquishment of jurisdiction, is thus a consideration for Courts faced with erroneous designation situations. The Court in ***Yeary*** noted, that "as in ***Binford***, numerous courts have concluded that an erroneous designation to a federal facility does not, in and of itself, operate as a transfer of the state's primary jurisdiction to federal authorities." *Id*. at *4, *citing, among others, **Cherry v. O'Brien,*** *supra*; ***Thomas v. DeBoo***, *supra*;; ***Allen v. Nash***, *supra**, Stroble v. Terrell**, supra,* at 816, (denying inmate's § 2241 petition where, "although the state did file an *ad prosequendum* writ to regain custody over [petitioner] after his erroneous transfer to a federal facility, nothing else in the parties' conduct suggests they believed primary custody had transferred from the state authorities to the federal authorities as a result of that erroneous transfer. Indeed, all indications are that the federal authorities immediately realized the error and promptly returned Stroble to state custody."); ***Jones v. Tews***, No. CV 13-7176-CJC(AGR), 2015 WL 6501515, at *2,*4, (C.D. Cal. Sept. 25, 2015) (Rosenberg, M.J.), *report and recommendation adopted*, No. CV 13-7176-CJC(AGR), 2015 WL 6478189 (C.C. Cal. Oct. 26, 2015); (holding that nine month erroneous designation to a federal facility  was a "short-lived mistake" and did not transfer primary jurisdiction over petitioner from state to federal authorities or cause his federal sentence to commence*); t**Reed v. Holinka***, No. 08-3209-RDR, 2010 WL 5093646, at *4,

(D. Kan. Dec. 8, 2010) *aff'd* 422 Fed.Appx 704 (10th Cir. 2011)  ("The court finds that this case is more like *Stroble* and *Binford* than it is like *Weekes*. Although there is no indication that the federal government used a writ of habeas corpus *ad prosequendum* to obtain custody of petitioner on May 31, 2007, the subsequent conduct of the BOP and the state authorities after petitioner arrived at FCI-Marion indicates that they realized a mistake had been made and intended that the state have primary custody of petitioner."); ¡*Heath v. O'Brien,* 647 F. Supp.2d 618, 620 (W.D. Va. 2009) ("Marshals' mistake of improperly taking custody of Heath and delivering him to USP Leavenworth" when he should have been in state custody did not entitle prisoner to habeas relief); ¡*Hayden v. Caraway*, No. JFM-11-173, 2012 WL 203398, at *5 (D. Md. Jan. 23, 2012) aff'd 475 Fed.Appx 21 (4th  Cir. 2012). ("An apparent administrative error in transferring Hayden to the USMS while state charges and a parole violator warrant detainer were pending constituted neither a relinquishment of primary jurisdiction nor commenced his federal sentence.").  Adopting the reasoning of this Court in *Cannon*, the Southern District of West Virginia District Court found that the erroneous designation in *Yeary* did not automaticity cede the state's primary jurisdiction, and that it likewise made its decision because "t his Court believes that a prisoner's time of incarceration should be governed by the sentence, not by administrative error." *Yeary* at  *5,  citing *Cannon*.

The undersigned is mindful of the fact that the duration of the erroneous designation in this case extends beyond that which this Court has previously identified as "short-lived" and also that there is authority from other districts outside the Fourth Circuit supporting the premise that a federal sentence commences at the time a prisoner is accepted by the BOP, even though the designation is erroneous.  Nonetheless, the

undersigned is not persuaded that the eleven-month period in this case is distinguishable from the established precedent in this Court in any way that would support a departure from it. Significant to this determination, is the fact that the eleven (11) month period has already been credited to petitioner's state sentence herein, and that his federal sentence is to run consecutively to his state one.  Indeed, the sentencing orders by the federal court in petitioner's case were silent as to any relationship that the federal sentence was to have to the state one, and the law is well settled that absent a clear directive from the district judge that the federal sentence was to be run concurrently with his pending state sentence, petitioner's multiple terms of imprisonment are to run consecutively. *See* *Baxter* v. Saad, No. 1:15-CV-211, 2016 WL 4097094, at * 6 (N.D. W.Va. Aug. 2, 2016) *citing* 18 U.S.C. § 3584(a).   Additionally, as noted above, while the District Court for the Eastern District of North Carolina, in *Luther*, *supra*  addressed an erroneous designation that lasted more than three years, its holding that the federal sentence commenced at the start of that designation was based on findings that: (1) the transfer had not taken place pursuant to a writ of habeas corpus *ad prosequendum* and as such was "complete", and that (2) the time period of three-plus years was of sufficient length that even assuming *for the sake of argument* "that this transfer began as a loan," (which it did *not*, since there was no writ) the period of three-plus years  "far exceeds the period in which a prisoner transfer should be considered a loan." *Luther*, supra at 778. (Internal citations omitted). The undersigned finds that the reasoning of *Luther* is not applicable to the present case.

In the case presently before this Court, the petitioner's transfer to the physical custody of federal authorities occurred pursuant to a writ of habeas corpus *ad prosequendum.*  There is no evidence to suggest that the transfer was "complete" and

that either the state or federal authorities intended for the state to relinquish its primary jurisdiction. Authorities from the state notified the BOP that the petitioner should be in state custody and requested his return. [Doc. 14-2 at 24]. The records of the BOP Designation and Computation Center, dated April 28, 2009, further indicate that Virginia did not stop running his sentence during the time petitioner was writted out. [Id]. Clearly, neither Virginia authorities, nor the BOP, intended for primary jurisdiction to transfer at the time of the erroneous designation. Rather, the BOP correctly deemed the petitioner to be in federal custody, commencing his sentence on January 9, 2009, the day he released from his state sentence to the federal detainer.

The undersigned accordingly finds that the petitioner was in the primary custody of the state of Virginia between the time of his arrest on March 31, 2006, and January 9, 2009, the date he was released to federal custody, and that as such, the BOP properly determined that his federal sentence commenced on January 9, 2009.

**B. Petitioner is not entitled to additional prior custody credit**

The calculation of credit for time spent in prior custody is governed by 18 U.S.C § 3585(b), which provides that:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

*Id.* (emphasis added). The Supreme Court has ruled that Congress made it clear in enacting the statute that a defendant cannot receive double credit for his detention time. ***Wilson***, *supra* at 337.   This Court has likewise expressly ruled that the "statutory

17

mandate" in § 3585(b) prohibits the BOP from applying prior custody credit toward a federal sentence if the prisoner has already received credit for that time toward another sentence. *Dowling v. Carter*, No. 1:12-CV-177, 2013 WL 2237866, at *3, (N.D. W.Va. May 21, 2013) (Internal citations omitted). !

!!!!!!!!!In this case, petitioner seeks to be awarded federal sentence credit for a period of time that has already been credited toward completion of his state sentence, and as such he is effectively seeking double-credit against both his state and federal sentences for the period of the erroneous designation He is not entitled to have that credit applied against his federal sentence, for any portion of that time, as he seeks here.

### C. Only Petitioner's sentencing court has subject matter jurisdiction to grant Petitioner's request for resentencing

Petitioner asks this Court to vacate his sentence and resentence him to reflect credit for the time he spent in the physical custody of the BOP during the erroneous designation but while he was still under the primary jurisdiction of the state of Virginia. The authority to reduce an inmate's sentence pursuant to 18 U.S.C. § 3582, however, is limited to the sentencing court. *See* 18 U.S.C. § 3582(c)(1)(A); *Robinson v. Wilson*, No. 1:17-CV-02630, 2017 WL 5586981, at *5 (S.D. W.Va.  Sept. 9, 2017) (Eifert, M.J), *report and recommendation adopted,* No. 1:17-CV-02630, 2017 WL 5586272 (Nov. 20, 2017) ("[A] § 3582 motion must be filed in the movant's underlying criminal action and be addressed by the sentencing court").  As petitioner was sentenced in the Eastern District of Virginia, the Northern District of West Virginia Court is without jurisdiction regarding his request for sentencing relief.

### V. Recommendation

For the foregoing reasons, it is hereby recommended that the Motion to Dismiss

or in the Alternative for Summary Judgment **[Doc. 14]** be **GRANTED** and the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, the petitioner may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**.  A copy of any objections shall also be submitted to the United States District Judge.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour***, 889 F.2d 1363 (4th Cir. 1989); ***Thomas v. Arn***, 474 U.S. 140 (1985); ***Wright v. Collins***, 766 F.2d 841 (4th Cir. 1985); ***United States v. Schronce***, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the  Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: April 26, 2024.

/s/ James P. Mazzone

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE